242

## THE REGENT.
### No. 16052.

District Court, E. D. New York.

Oct. 2, 1944.

See also 47 F.Supp. 995.

Harry D. Thirkield and P. A. Beck, both of New York City, for Daniel F. Young, Inc., operating agent for Joseph G. Kearns and Charles Recht, cotrustees.

Charles Recht, of New York City (Hyman Oppenheim and Maurice Finkelstein, both of New York City, of counsel), cotrustee.

GALSTON, District Judge.

This is a possessory libel suit which was tried and resulted in a decision to dismiss the libel, The Regent, D.C., 35 F.Supp. 985. A motion at the conclusion of the trial by the libellant for the issuance of letters rogatory to a competent tribunal of the United Soviet Socialist Republics was denied. Before a decree of dismissal was entered, the libellant moved for reargument of the motion for the issuance of letters rogatory, and while such motion was pending the parties entered into a stipulation, on January 14, 1941, for the reopening of the action for trial to enable trustees to be appointed to operate the vessel pending the final determination of the action. The stipulation also provided that Joseph G. Kearns and Charles Recht be appointed joint trustees to operate the vessel pending the final determination of the action; that Daniel F. Young, Inc. be appointed by the joint trustees as the operating agent of the Regent, and that depositions of Latvijas Kugniecibas Sabiedriba and its officers and directors, Karlis Jansons, Janis Freyman and Janis Zaloman, may be taken by the libellant herein, and that the action be continued for a period of six months from January 14, 1941, to permit the return of the depositions with leave to either party to ask for a continuance at the expiration thereof. It may be observed that my attention has not been called to any order of continuance since the expiration of the six months referred to.

On the consent of the parties, an order was entered on January 15, 1941, which provided for the appointment of Kearns and Recht as joint trustees, and for the appointment of Daniel F. Young, Inc., as the operating agents of the trustees. On June 26, 1942, a stipulation was entered into by the trustees, by Recht and Kearns, and Daniel F. Young, Inc., consenting to

an order appointing Irwin Kurtz, Esquire, master to hear and report "all the issues herein relating to the financial operation of the S. S. Regent by Daniel F. Young, Inc. as operating agent pursuant to the order of this court dated January 15, 1941, and report thereon to this court with all convenient speed." That order was signed on June 29, 1942. Protracted hearings were had before the master, and on June 13, 1944, he filed his report. To this report, Daniel F. Young, Inc., as operating agent, filed exceptions on June 16, 1944, and Charles Recht as co-trustee filed exceptions on June 17, 1944.

The questions for decision, therefore, relate to those exceptions.

First there will be considered the Recht group of exceptions. It should be noted that the master's report deals not only with the S. S. Regent, but also with the financial operations of the steamships Abgara and Ciltvaira by Daniel F. Young, Inc., as operating agents, in causes pending in the United States District Court for the Southern District of New York. So far as the report of the master relates to those other vessels, there is no question for decision before me. Certain of the exceptions filed by Recht relate to those other vessels and to the extent that they do so, such exceptions will not be considered in this opinion.

▇ Proceeding then to the Recht exceptions, the first to be considered is that numbered 2, to the finding of the master which disallows Recht's requested surcharge of $181,500 for insufficient insurance Recht, in this exception, fails to state how much of this requested surcharge resulted from under-insurance of the S. S. Regent. No evidence was adduced by Recht bearing on the insurable value of the Regent at the time that she was sunk, on June 14, 1942. To be sure, the accountant's report to Kearns and Recht, as co-trustees, concerning operations of the three vessels (Exhibit 72) gives some data about the Regent. War risk insurance on the S. S. Regent as at March 1, 1941, was in the sum of $250,-000. During the period of the trusteeship to the date of the sinking, repairs and betterments were effected costing $118,034.-70. Between March 1, 1941, and the date of the sinking, additional insurance was procured by the operating agents in the sum of $78,750. Thus, at the time of the sinking, there was insurance in effect amount-

ing to $328,750. No insurance was carried for bunker coal on the Regent at the time of the sinking. Indeed such insurance was carried only to and including voyage No. 13, for which insurance premiums were paid on November 27, 1941. Apparently the contention of Recht is that the increase in insurance should at least have equalled the repairs and betterments made during the period of the trusteeship and prior to the sinking. Of course, Young, Inc., were required to use sound business judgment as operating agents, both as to the insurance and all other matters effecting operations. The firm consulted Despard & Co., Incorporated, which had been in the business of marine insurance for over sixty years. Van Name himself, vice president of the corporation, had been in the business of marine insurance for twenty-nine years. He handled the insurance on the three vessels in the early part of 1941, and through part of 1942. It was his opinion that Young, Inc. used good business judgment in keeping the insurance coverage as it did on these three vessels, taking into consideration the current rates on war risk. Van Name admitted that bunker insurance could have been procured for the Regent, but that in his opinion it was not necessary to do so since there was sufficient other insurance on the vessel to embrace such loss. Thus, so far as the record is concerned, Recht offered no evidence which would justify a finding that the Regent was not properly insured at the time of her sinking, nor indeed any evidence at all to show, if there was any insufficiency, how much that insufficiency amounted to. As has been said, he rests his case solely on the contention that the increase in insurance between March 1, 1941 and the date of sinking was short of the cost of repairs and betterments during that period. Van Name testified that of the $250,000 of insurance on the Regent in existence in March, 1941, $200,000 covered hull, machinery, etc., and $50,000 disbursements, anticipated profits and excesses. That was the amount, it may be noted, that the owners had in 1940. At that time the insurance apparently was figured, according to Van Name, at $60 per gross ton. In the later insurance the tonnage insurance was increased to $80 because of general marine and war conditions. It should be noted here also, for the matter will be referred to in the consideration of another of Recht's exceptions, that the war risk in-

surance was in an amount equal to the marine insurance on the hull, plus an allowance for anticipated profits.

I think, on the whole, it must be concluded that there was no showing of lack of prudence on the part of the managing agents. However, it must be noted that in reaching this conclusion I cannot accept the master's observation that after Van Name concluded his testimony, "Recht states that he would accept the testimony of Van Name, the witness called by the other side, and that he would not call any witness of his own on the question of insurance." Such an expression leads to the possible inference that Recht had agreed with Van Name's opinion. What Recht did say was that calling of further witnesses on insurance was unnecessary, "since the facts as to Young, Inc.'s acts and omissions regarding their obligation to insure the ships are in the record and undisputed."

For the foregoing reasons, and for failure of Recht to meet the case made out by the managing agents for prudent consideration and action in taking out war risk insurance, Exception 2 is overruled.

We now come to Recht's Exception 3, which relates to the requested surcharge of $55,000 for future profits insurance on S. S. Abgara and S. S. Regent, collected and retained by Daniel F. Young, Inc.

As has been indicated hereinbefore, I shall not deal at all with this exception so far as it relates to the S. S. Abgara. Prior to the sinking of the S. S. Regent, June 14, 1942, the premiums on policies running to the managing agents for future profits had been paid by Young. The master found, and was correct in so doing, that Young, as operating agent, had the legal right to insure its prospective profits as such. It is true that Young, in the first instance, should not have paid the premiums for such insurance and charged them to the ships involved. Though a premium for such insurance on the S. S. Regent had been originally charged to the ships, on April 9, 1942, prior to the sinking, such premiums had been re-paid by Young. The proceeds of the policy are thus properly Young's, since the premium was paid by it, and since it had clearly, as managing agent, an insurable interest. There would remain a question whether Young, Inc., should have taken out similar insurance for the trustees. That question is answered though in the finding that the war risk insurance policies in effect covered such insurance.

Exception No. 3, then, so far as it relates to the S. S. Regent, is overruled.

Exceptions 4 and 5 do not relate to the S. S. Regent and therefore will not be considered.

Exceptions 6 and 7 may be discussed together, for they relate to requested surcharges for fees paid to Joseph Barrett and to Turnure, Lydecker & Voss. The master found that Barrett, a lawyer, was employed by Young prior to the order of this court appointing Kearns and Recht as trustees, and had been employed for the respondent to defend the libel for possession of the Regent, filed by Recht against the Latvian owners. He also found that Barrett had performed legal services for Young in matters relating to the other two ships. Barrett's services terminated prior to January 15, 1941, the date of the entry of the order appointing Kearns and Recht as joint trustees, and Daniel F. Young, Inc., as operating agent of the trustees for the S. S. Regent. None of the services rendered by Barrett was performed under the authority of this court, and none was rendered subsequent to that order. These trustees are under no obligation to Barrett for the services he rendered Daniel F. Young, Inc., or their principals, prior to January 15, 1942. Nor does any such obligation of the co-trustees arise from the agreement (Exhibit 9) made on January 14, 1941 between Daniel F. Young, Inc., and Charles Recht. There is no finding that such agreement was made or adopted by the trustees. It may very well be that the trustees adopted that agreement, but there should have been a specific finding in that regard. However, the result is not changed, for Barrett performed no services for the co-trustees.

In regard to Turnure, Lydecker & Voss, they were retained by Young, Inc., to defend the action brought by Barrett in the Supreme Court of Westchester County for legal services rendered, not to the trustees herein, but on behalf of Young, Inc., as agents for the alleged owners of the S. S. Regent. That action, it may be noted, included alleged services rendered for the other vessels. Barrett's bill of particulars in that action (Exhibit 122) clearly shows that there was no claim made by him for services rendered for the Regent subsequent to the trusteeship beyond filing an order of discontinuance on January 16, 1941.

Since, then, neither Barrett nor the firm of Turnure, Lydecker & Voss performed any service for the benefit of the trusteeship, Recht's Exceptions 6 and 7 will be sustained, as must also Exceptions 9 and 10 so far as they relate to the S. S. Regent, for they relate to legal services rendered by Harry D. Thirkield prior to the trusteeship.

Recht Exception 8 will not be considered because it does not relate to the Regent.

Daniel F. Young, Inc., filed Exceptions 1 to 5 inclusive, all of which are overruled since they relate to surcharges in respect to the bills of Barrett, Turnure, Lydecker & Voss, and Thirkield for legal services rendered prior to the trusteeship.

Settle order on notice.